## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                          |   |                  |
|------------------------------------------|---|------------------|
| LINDA EMERY,                             | : |                  |
|                                          | : | CIVIL ACTION     |
| Plaintiff,                               | : |                  |
|                                          | : |                  |
| v.                                       | : |                  |
|                                          | : | NO.  14-3373     |
| CAROLYN W. COLVIN,                       | : |                  |
| Acting Commissioner of Social Security,  | : |                  |
|                                          | : |                  |
| Defendant.                               | : |                  |

### MEMORANDUM

BUCKWALTER, S.J.                                         August 11, 2015

Currently pending before the Court are Plaintiff Linda Emery's Objections to the Report

and Recommendation of United States Magistrate Judge Linda K. Caracappa.  For the following

reasons, the Objections are overruled.

## I.    PROCEDURAL HISTORY

On March 21, 2013,  Plaintiff Linda Emery, then fifty-four years old, filed an application

for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42

U.S.C. § 401, et seq. and for Supplemental Security Income ("SSI") pursuant to Title XVI of the

Social Security Act, 42 U.S.C. § 1381, et seq.  (R. 180–192.)[1]  Her claim alleged disability since

February 5, 2013,[2] due to severe depression, anxiety, and panic attacks.  (Id. at 220.)  The state

---

[1]  For ease of discussion, citations to the administrative record will be referenced as "R.
[page number]."

[2]  Although the original onset date was March 1, 2011, Plaintiff's attorney amended it to
February 5, 2013 based on a previous disability determination.

agency denied both of Plaintiff's applications on May 6, 2013.  (Id. at 116–124.)  Plaintiff timely

requested a hearing before an administrative law judge ("ALJ").  (Id. at 125–130.)  Following the

hearing—at which Plaintiff and a vocational expert testified—ALJ Paula Garrety issued a

decision, dated January 15, 2014, deeming Plaintiff "not disabled."  (Id. at 14–29, 35–55.)

Plaintiff then filed an appeal.  (R. 10.)  On May 8, 2014, the Appeals Council denied Plaintiff's

request for review, (id. at 1–3), making the ALJ's ruling the final decision of the agency.  See 20

C.F.R. §§ 404.972, 416.1572.

Plaintiff initiated the present civil action in this Court on June 9, 2014.  Her Request for

Review set forth four alleged errors as follows: (1) the ALJ failed to properly evaluate and

improperly discounted the opinions of the treating therapist; (2) the ALJ erred in failing to

develop the record; (3) the ALJ improperly rejected the low GAF score contained in the record;

and (4) remand for consideration of new evidence is warranted.  On May 29, 2015, United States

Magistrate Judge Linda K. Caracappa issued a Report and Recommendation ("R&R")

recommending that Plaintiff's Request for Review be denied and that judgment be entered in

favor of Defendant.

Plaintiff filed Objections to the R&R on June 8, 2015, asserting that: (1) the Magistrate

Judge improperly determined that the ALJ adequately considered and properly gave little weight

to the opinions of Plaintiff's therapist, Ms. Morris; (2) the Magistrate improperly found that

remand was not required due to the ALJ's failure to include Dr. Withington's assessment in the

record; (3) the Magistrate Judge improperly found that the ALJ appropriately rejected Dr.

Abraham's assessment of a GAF score of forty-five; and (4) the Magistrate Judge improperly

found that there was no basis for a new evidence remand.  To date, Defendant has filed no

response to the remand, making this matter ripe for judicial review.

## II.     STANDARD OF REVIEW[3]

### A.     Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)).  When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence.  Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

### B.     Standard of Review of Objections to a Report and Recommendation

Where a party makes a timely and specific objection to a portion of a report and

---

[3]  The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge.  In lieu of repeating that discussion, the Court incorporates by reference that portion of the R&R into this Memorandum.

recommendation by a United States Magistrate Judge, the district court is obliged to engage in de novo review of only those issues raised on objection.  28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1).  The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.  See United v. Raddatz, 447 U.S. 667, 676 (1980).

## III.    DISCUSSION

### A.    Whether the Magistrate Judge Erred in Affirming the ALJ's Decision to Accord Little Weight to the Opinions of Plaintiff's Therapist, Ms. Morris

Plaintiff's first objection concerns the ALJ's rejection—and the Magistrate Judge's subsequent affirmation—of the opinions of Plaintiff's treating therapist, Ms. Morris. Specifically, Elizabeth Morris, MA, MHP, a psychotherapist, completed a Mental Capacity Assessment dated July 26, 2013, in which she opined that Plaintiff had extreme limitations in almost all functional areas, including her ability to understand, remember, and carry out short, simple instructions; to remember locations and work-like processes; to maintain concentration and attention for extended periods; to sustain an ordinary routine without special supervision; to work in coordination or proximity to others; to make simple work related decisions; to complete a normal workday or workweek; to perform at a consistent pace; to interact appropriately with the public, coworkers, and supervisors; to respond appropriately to changes in the work setting; to travel in unfamiliar places; and to set realistic goals or make independent plans.  (R. 80–83.) By way of explanation, Ms. Morris indicated that Plaintiff's "depression and anxiety causes

4

difficulties with cognition and effective decision making skills.  [Plaintiff] has extreme anxiety from transitions and daily stresses."  (R. 383.)  Ms. Morris also wrote a letter, dated November 27, 2013, that she had treated Plaintiff since July 29, 2011, and noted that Plaintiff had trouble completing assignments, experienced extreme anxiety when in contact with others and had loss of freedom of verbal expression, and continued to have challenges with becoming anxious and depressed from daily life issues.  (R. 440.)  Ms. Morris recommended that Plaintiff be considered for SSI due to her "inabilities to complete task[s] independently, to handle any stressful and challenging responsibilities and low cognition of self and abilities."  (Id.)

The ALJ gave little weight to Ms. Morris's assessment because she is not an acceptable medical source within the meaning of the regulations.  Further, the ALJ found that Ms. Morris's opinion was not supported by either Plaintiff's activities of daily living or the contemporaneous treatment notes, which focused almost entirely on Plaintiff's financial problems that required her to live with her parents, and on her recovery from alcohol dependence, rather than specific mental symptoms.  On review of this decision, the Magistrate Judge determined that the ALJ adequately considered Ms. Morris's opinion and that the ALJ's medical conclusions were supported by substantial evidence.  Specifically, the Magistrate Judge remarked that the treatment notes undermined many of Ms. Morris's opinions, that the ALJ considered some of Ms. Morris's opinions and included all credibly-established limitations in the RFC findings, and that the ALJ considered the Social Security regulations, particularly the SSR 06-03p factors, in determining the weight to afford to Ms. Morris's opinion.

Plaintiff now takes issue with the ALJ's decision to accord little weight to Ms. Morris and with multiple portions of the Report and Recommendation addressing that decision.  The

5

Court addresses each of Plaintiff's arguments individually.

First, Plaintiff challenges the Magistrate Judge's determination that the ALJ was entitled to accord little weight to Ms. Morris's opinion because she was not an "acceptable medical source." The Court finds no error in this determination. Under the Social Security Regulations, a "treating source"—whose opinions may be entitled to controlling weight—is a claimant's "physician, psychologist or other acceptable medical source." See 20 C.F.R. 404.1502; 404.1527(c)(2). A therapist, such as Ms. Morris, is not a an "acceptable medical source." Id. § 404.1513(d). As explained by the Social Security Administration:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d).

Social Security Ruling 96-03p, 2006 WL 2329939, at *2 (S.S.A. 2006). While this principle, standing alone, is an insufficient basis on which to outright reject a treating therapist's opinion, it is a proper factor to consider when determining precisely what weight to give such an opinion. Id. at *5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, 'acceptable medical sources' 'are the most qualified health care professionals.'"); Rios v. Barnhart, 57 F. App'x 99, 101 n.2 (3d Cir. 2003) (noting that in considering the opinion of a non-acceptable medical source, the ALJ may accord

the opinion little weight).

In the present case, the ALJ did not rely solely on the fact that Ms. Morris was not an "acceptable medical source," but also noted that her opinion was not supported by the contemporaneous treatment notes.  (R. 26.)  Moreover, the ALJ commented that Plaintiff's activities of daily living undermined many of Ms. Morris's imposed functional limitations. Accordingly, the Court rejects this portion of Plaintiff's argument.

Second, Plaintiff contends that the Magistrate Judge improperly found that the ALJ's rejection of Ms. Morris's opinions was supported by notes indicating Plaintiff's condition was reported to be stable during treatment.  Specifically, Plaintiff cites to the Third Circuit's decision in Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000) for the proposition that a doctor's "observations that [a claimant] is 'stable and well controlled with medication' during treatment does not support the medical conclusion that [the claimant] can return to work," since a treatment environment lacks the "stresses that accompany the work setting."  Id. at 319.  Plaintiff goes on to note that she displayed observable signs of anxiousness and depression even during supportive sessions.

Social Security Ruling 96-03p sets out a list of factors that should be considered in weighing the opinion from a medical provider who is not an "acceptable medical source:"

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

SSR 96-03p, 2006 WL 2329939, at *4–5.  It is well-established that "[w]hile the opinion of a

treating therapist constitutes relevant evidence that is entitled to consideration, the amount of

weight afforded to the opinion depends on the extent to which it is consistent with the other

evidence of record."  Horner v. Comm'r of Soc. Sec., No. Civ.A.10-326, 2012 WL 895932, at *1

n.1 (W.D. Pa. Mar. 15, 2012).

 The ALJ, in this case, did not completely discount Ms. Morris' opinion based on

Plaintiff's stability during treatment; rather the ALJ gave Ms. Morris's imposition of extreme

limitations on functioning little weight based, in part, on the inconsistency of those limitations

with the findings during treatment.  Indeed, the ALJ provided an extensive two-page review of

Ms. Morris's treatment notes, wherein Ms. Morris commented that Plaintiff's depression and

anxiety were related, in large part, to her living situation, her lack of income, and her inability to

obtain Social Security benefits.  (R. 24–25.)  Many of the notes suggested that as Plaintiff was

able to sustain her sobriety, develop new relationships, and participate more fully in AA, her

moods improved, often becoming "euphoric."  (Id.)  Moreover, mental status evaluations were,

in large part, unremarkable aside from a general depressed state.  Even outside the treatment

sessions, Plaintiff denied sleep/appetite disturbances and denied psychiatric symptoms, and, for

the most part, Plaintiff's stressors remained focused on her living situation.  (R. 418–36.)  As

observed by the ALJ:

> Overall, the treatment notes appear to concentrate on the claimant's stress due to her
> financial problems and her inability to afford to move into her own home and to stop
> her reliance on her parents for financial support, rather than specific psychological
> symptoms.  The therapy and medication management notes also make repeated
> references to the claimant's quest to obtain SSI benefits as a primary source of her
> stress.  However, the records consistently indicated relatively normal mental status

8

examinations and good results with sobriety and medication compliance.

(R. 27.)   As Ms. Morris's  medical notations were vastly divergent from the extreme restrictions she imposed upon Plaintiff, the ALJ's decision to limit the weight given to her opinion is well supported by substantial evidence.

Third, Plaintiff objects to the ALJ's and the Magistrate Judge's reliance on Plaintiff's attendance at AA meetings and church as an indication of her ability to function in a work place environment.  She goes on to assert that AA meetings are a treatment modality, not evidence of ability to sustain regular employment.  Further, she contends that participating in church activities involves no more than a few hours a week in a supportive environment, whereas work activity requires the ability to function on a regular and continuing basis eight hours a day, five days a week.

This argument, however, understates the full extent of the ALJ's reasoning.  The ALJ commented as follows:

> The contemporaneous treatment notes indicate anxiety and panic attacks, but do not document the severity or frequency of attacks alleged by the claimant.  In fact, the notes reflect that the claimant has been sober from alcohol for a number of months and that she regularly attends AA meetings and was forming a family type relationship with fellow members and church members, and that she was euphoric after speaking at a meeting, which contradict the assertions of extreme anxiety in social situations.  Notes from August 2013 indicate that she was staying with friends most of the time, which would indicate that she was able to engage in social interaction.  While the claimant alleges daily panic attacks that last for 15 minutes, the contemporaneous treatment and therapy records do not support her contention.  At most, the records indicate panic attacks twice a week.  The records do not indicate any problems with activities of daily living or personal care and consistently indicate good appearance and grooming.  There is no indication that the claimant is not able to perform household chores and the claimant stated in the Function Report that she cleans, does laundry, prepares simple meals, and shops.  While the treatment records reflect some difficulties with concentration and attention, those limitations have been addressed in the residual functional capacity and are not work preclusive.

(R. 26–27.)  In other words, contrary to Ms. Morris's opinion that Plaintiff had extreme or marked limitations on her ability to carry out short and simple instructions, work in coordination with others without being distracted, interact appropriately with the general public, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and set realistic goals or make plans independently of others, Plaintiff's actual activities of daily living indicated her ability to meet new people in church and at AA meetings, attend to her own grooming and household tasks, and even speak publicly at an AA meeting with aspirations to do so again.  While the ALJ could not have relied solely on Plaintiff's described activities of daily living to baldly discount medical limitations, the ALJ acted properly in considering such activities as a basis for discrediting the severity of Plaintiff's limitations as imposed by Ms. Morris.

Fourth, Plaintiff objects to the Magistrate Judge's finding that, in developing Plaintiff's residual functional capacity ("RFC"), the ALJ accounted for Ms. Morris's limitations by limiting her to work involving no detailed instructions, simple routine tasks, infrequent changes in the work setting, and limited contact with the public and co-workers.  Yet, according to Plaintiff, relevant jurisprudence clearly holds that a mere restriction to simple, repetitive work, and low stress jobs does not account for moderate limitations in social function and concentration, persistence, or pace.

While Plaintiff is correct that Third Circuit precedent requires an ALJ to include restrictions specific to nonexertional limitations, including concentration, persistence, and pace, unless the record otherwise suggests that no additional limitations are necessary, Burns v. Barnhart, 312 F.3d 113, 123–24 (3d Cir. 2002); Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir.

10

2004), there is no indication that the ALJ failed to include the appropriate limitations.  Giving weight to the credible portions of Ms. Morris's opinion, including Plaintiff's issues with memory and concentration and Plaintiff's issues interacting with the public, the ALJ indicated that Plaintiff needed infrequent changes in the work settings, was restricted to simple, routine tasks with no detailed instructions, and had to have very limited contact with the public and co-workers.  "Case law in this circuit makes clear that a restriction limiting an individual, e.g., to 'simple, routine tasks' or 'unskilled work,' is sufficient to accommodate moderate limitations in concentration, persistence and pace."  Shaffer v. Colvin, No. Civ.A.13-925, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) (citing Parks v. Comm'r of Soc. Sec., 401 F. App'x 651, 655–56 (3d. Cir. 2010) (RFC limiting claimant to performing simple, unskilled work adequate to account for moderate limitations in concentration, persistence, and pace); McDonald v. Astrue, 293 F. App'x 941, 946–47 (3d Cir. 2008) (RFC limiting claimant to "simple, routine tasks" adequate to accommodate moderate limitations in concentration, persistence, and pace); Menkes v. Astrue, 262 F. App'x 410, 412–13 (3d Cir. 2008) (no error in RFC restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence, and pace); Douglas v. Astrue, No. Civ.A.09-1535, 2011 WL 482501 (E.D. Pa. Feb. 4, 2011) (RFC limiting claimant to unskilled work adequately accounted for moderate limitations in concentration, persistence, or pace)); see also McBeth v. Colvin, No. Civ.A.12-3583, 2013 WL 6061364, at *17 (E.D. Pa. Nov. 18, 2013) (finding that a hypothetical posed to the VE, which limited Plaintiff to unskilled work, with routine repetitive tasks and no more than occasional interaction with the public, co-workers and supervisors, adequately reflected the plaintiff's moderate difficulties with concentration, persistence, and pace).

Finally, Plaintiff asserts that the ALJ failed to abide by the dictates of SSR 06-03p by considering the consistency of Ms. Morris's opinion that she is incapable of working with the assessments by Plaintiff's psychiatrists—Dr. Withington and Dr. Abraham—that Plaintiff is disabled.  Plaintiff's argument on this point, however, is completely misplaced.  Dr. Withington's statement was not part of the record and, thus, was not before the ALJ on consideration.[4]  Thus, the only "acceptable medical source" opinion of record was that of Dr. Abraham, who opined, by virtue of single check in a box, that Plaintiff was permanently disabled due to generalized anxiety, panic disorder, and major depressive disorder.  (R. 378.)   The ALJ properly rejected that opinion in light of the fact that it did not offer a medical opinion, but rather reached the ultimate question of disability, which is an issue reserved for the ALJ.  Smith v. Comm'r of Soc. Sec., 178 F. App'x 106, 112 (3d Cir. 2006) (holding that a treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance" and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner."); see also Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

In sum, the Court finds that the ALJ's decision to accord little weight to Ms. Morris's imposition of extreme limitations on Plaintiff's work-related abilities is well supported by substantial evidence.  As noted by the ALJ, and reaffirmed by the Magistrate Judge, Ms. Morris was a non-acceptable medical source and, thus, was not entitled to controlling weight or even to

---

[4]  As discussed in further detail *infra*, the Court also finds no reversible error in the failure of the Magistrate Judge to remand the case for consideration of Dr. Withington's assessment.

the deference accorded an "acceptable medical source."  Moreover, Ms. Morris's opinion was

significantly undermined by both her own treatment notations—which found Plaintiff to have a

far less severe condition than indicated in the functional assessment—and by Plaintiff's activities

of daily living—which indicated that Plaintiff was far more functional than suggested by Ms.

Morris.  Aside from the one-page checklist opinion from Dr. Abraham that Plaintiff was

disabled, Ms. Morris's opinion was not consistent with any medical opinion of record.  Finally,

the ALJ—far from completely disregarding Ms. Morris's assessment—took into consideration

the limitations that were supported by the record and included them in a properly-formed residual

functional capacity assessment.  Accordingly, the Court finds no basis for Plaintiff's objection on

this ground.

**B.**     **Whether the ALJ Erred in Failing to Make Dr. Withington's Assessment
Part of the Record**

Plaintiff's second objection argues that the ALJ erred in failing to develop the record

because the ALJ did not consider a February 21, 2012 medical source statement from Dr.

Withington, which was opinion evidence by a treating provider.  On consideration of this issue,

the Magistrate Judge found that the ALJ developed a full and fair record.  The Magistrate

remarked that, at the hearing, Plaintiff's counsel informed the ALJ that some of the medical

information was not entered into the record, prompting the ALJ to leave the record open for

thirty days after the hearing for submission of additional evidence.  Plaintiff submitted many

treatment notes from Dr. Withington, which the ALJ reviewed and considered, but counsel did

not provide Dr. Withington's February 21, 2012 statement.  The Magistrate Judge determined

that, notwithstanding the absence of that report in the record, the ALJ had sufficient medical

13

evidence in the record to make a disability determination.  Such evidence included Dr.

Withington's multiple treatment notes and ALJ Deborah Mande's summary of that report in her

February 4, 2013 opinion, which ALJ Mande expressly reviewed and considered in making the

disability determination at issue.  Finally, the Magistrate Judge indicated that the ALJ's residual

functional capacity assessment accounted for many of the limitations set forth in Dr.

Withington's opinion.

    While Plaintiff's objection on this point gives the Court some pause in light of the general

policy that disability determinations should be made on a full and fair record, the Court

ultimately finds no error warranting remand.  The harmless error standard is well-established in

our jurisprudence.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to

remand where stricter compliance with social security ruling would not have changed the

outcome of the case).  Remand is not required if the outcome of the case would be the same.

Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (holding that administrative law does not

require the court to remand a case "in quest of a perfect opinion unless there is reason to believe

that the remand might lead to a different result.")).

    In the present case, the Magistrate Judge properly refused to remand the case to allow the

ALJ to consider Dr. Withington's opinion—which was omitted due to Plaintiff's counsel's

misstep—on the grounds of harmless error.  First, it is undisputed that the ALJ had before her all

of Dr. Withington's treatment records on which the opinion was based.  Those records span from

August 4, 2011 to March 27, 2013 and, thus, pre-date and post-date his assessment.  The ALJ

engaged in a thorough review of those records, noting that Plaintiff had unremarkable mental

status examinations, that medication progress notes reflected improvement on her medication

regime, and that, in 2013, many of her panic attacks were secondary to her living with her parents and being denied SSI.  (R. 24.)  Indeed, the most recent notes found that other than these problems, Plaintiff's condition was stable and controlled on the medication.  (R. 344–45.)

Second, Dr. Withington's assessment was a checklist Mental Residual Functional Capacity Questionnaire.  The doctor merely checked off boxes indicated Plaintiff's limitations. As noted above, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [W]here these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect.'"  Mason, 994 F.2d at 1066 (quoting Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)).  Not only was Dr. Withington's assessment unaccompanied by a thorough written report, the extreme limitations noted on that checklist were not reflected anywhere in the contemporaneous treatment notes.

Third, the previous ALJ—ALJ Mande— fully considered Dr. Withington's assessment and concluded that it was entitled to little weight because it was not consistent with the medical record.  (R. 86.)  ALJ Mande then went on to discuss the contrary medical record, including contemporaneous recommendations by Plaintiff's treating therapist that Plaintiff seek out employment.  As that determination was well-supported by substantial evidence, the Magistrate Judge was correct in finding that it would not have influenced the current decision at issue.

Finally, based on the other medical evidence of record, the ALJ actually incorporated some of Dr. Withington's imposed limitations into the residual functional capacity.  For example, Dr. Withington noted that Plaintiff would have trouble dealing with skilled and semiskilled work, maintaining attention for two hour segments, and handling instructions.  (R. 85.)  Consistent with those limitations, Plaintiff was limited to simple, routine tasks with no detailed instructions.  (R.

15

21–22.)  Likewise, Dr. Withington noted that Plaintiff would have trouble working in

coordination with or in proximity to others,  accepting instructions and responding appropriately

to supervisors, traveling in unfamiliar places, and responding appropriately to changes in a

routine work setting.  (R. 85–86.)  The current RFC accommodated such limitations by

restricting Plaintiff to infrequent changes in the work setting and to limited contact with the

public and co-workers.  (R. 22.)

Ultimately, the Court finds that a remand for consideration of Dr. Withington's February

2012 assessment would not alter the outcome of this case and any failure of the ALJ to consider

it was harmless error, if it could even be deemed error at all.  The assessment was previously

rejected by another ALJ, was inconsistent with the medical evidence, and was nothing more than

a checklist opinion.  Moreover, the ALJ in this case had all of Dr. Withington's treatment notes

from before and after the assessment, which provided a far more longitudinal picture of

Plaintiff's condition and provided substantial evidence for the ALJ's decision.  Finally, despite

not having Dr. Withington's assessment, the ALJ actually incorporated some of the limitations

noted by Dr. Withington into the RFC assessment based on the underlying medical record.

An ALJ, faced with an inadequate record, has the discretion to either recontact treating

physicians, request additional records, ask the claimant to undergo a consultative examination, or

ask the claimant or others for more information.  20 C.F.R. §§ 404.1520b(c), 416.927b(c).  If,

however, the ALJ can make a decision based on the existing evidence of record, he has the

discretion to do so.  Id. § 404.1520b(b), 416.927b(b).  Because the ALJ in this matter had

sufficient evidence on which to make a disability determination, her failure/inability to consider

Dr. Withington's opinion is not grounds for remand.[5]

### C.      Whether the ALJ Properly Rejected Dr. Abraham's Assessed GAF Score of Forty-Five

GAF scores "are used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults." Irizarry v. Barnhart, 233 F. App'x 189, 190 n.1 (3d Cir. 2007) (citing 65 Fed. Reg. 50746–01, 50764–65 (2000)). "The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." West v. Astrue, No. Civ.A.09-2650, 2010 WL 1659712, at *4 (E.D. Pa. Apr. 26, 2010). Generally, a plaintiff's GAF score is not considered to have a "direct correlation to the severity requirements [of the] mental disorder listings." 65 Fed. Reg. 50746-01, 50764–65 (2000). Nonetheless, the Social Security Administration's rules still note that GAF remains the scale used by mental health professionals to "assess current treatment

---

[5] Plaintiff cites Jones v. Colvin, No. Civ.A.14-00169, 2015 WL 1474851 (E.D. Mo. Mar. 31, 2015) and Plamondon v. Astrue, No. Civ.A.12-0800, 2013 WL 653166 (D. Or. Feb. 21, 2013) for the proposition that an ALJ fails to provide a full and fair hearing by failing to obtain evidence contained in a prior file. Neither case, however, is applicable. In Jones, the plaintiff had previously been awarded SSI and the benefits had ceased. The court found that the failure of the ALJ to consider the prior record was error because "'[t]he existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination.'" Jones, 2015 WL 1474851, at *8 (quoting Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)). Similarly, in Plamondon, the plaintiff was found to be disabled for purposes of prospective SSI benefits, but was denied retroactive benefits due to ambiguous evidence regarding the start date of her disability. The court noted that "the ALJ should consult a medical advisor when there are inadequate medical records to determine when the impairment became disabling." Id. at *3.

In the present case, however, Plaintiff was never deemed disabled or awarded social security benefits. The record contained no ambiguity and the medical evidence was more than sufficient on which to render a disability determination. The only missing piece of evidence was a checklist report that a previous ALJ had already rejected. Accordingly, these cases fail to bolster Plaintiff's position.

needs and provide a prognosis." Id.  As such, "it constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability."  Pounds v. Astrue, 772 F. Supp. 2d 713, 725 (W.D. Pa. 2011) (quoting Colon v. Barnhart, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006)).  Notably, "a GAF score at or below 40 should be carefully considered because such a low score reflects 'a major impairment in several areas such as work, family relations, judgment, or mood.'"  Sweeney v. Comm'r of Soc. Sec., 847 F. Supp. 2d 797, 802 (W.D. Pa. 2012) (quotations omitted).  A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational or school functioning.  Diagnostic and Statistical Manual of Mental Disorders 3–32 (4th ed. 1994).

The district courts in the Third Circuit have repeatedly held that an ALJ's failure to specifically discuss a GAF score that supports serious impairments in social or occupational functioning is cause for remand.  See West v. Astrue, No. Civ.A.09–2650, 2010 WL 1659712, at *4–6 (E.D. Pa. Apr. 26, 2010) (remanding for failure to consider GAF scores and citing seven district court cases from 2004 through 2009 taking the same approach).  Nonetheless, GAF scores are not dispositive, but merely "medical evidence that informs the Commissioner's judgment of whether an individual is disabled."  See Rios v. Comm'r of Soc. Sec., 444 F. App'x 532, 535 (3d Cir. 2011); see also Davis v. Astrue, 830 F. Supp. 2d 31, 46 (W.D. Pa. 2011). "[W]hile a GAF score may indicate an individual's capacity to work, it can also correspond to unrelated factors, and absent evidence that a GAF score was meant to indicate an impairment of the ability to work, a GAF score alone is insufficient to establish disability."  Clayton v. Colvin, No. Civ.A.14-400,  2014 WL 5439796, at *6 (W.D. Pa. Oct. 24, 2014).  Therefore, where a treating source has failed to provide specific findings to explain a given GAF score, or to tie the

GAF score into some explanation of a claimant's ability to work, an ALJ need not provide a specific assessment of the GAF score.  Gilroy v. Astrue, 351 F. App'x 714, 716 (3d Cir. 2009). Ultimately, an ALJ is free to disregard such a score so long as he or she gives a rationale for doing so.  Kroh v. Colvin, No. Civ.A.13-1533, 2014 WL 4384675, at *17–18 (M.D. Pa. Sept. 4, 2014).

In the present case, the ALJ did not completely disregard Plaintiff's GAF score of forty-five, but rather explicitly discussed it.  Specifically, she stated

> The claimant underwent a yearly psychiatric re-evaluation on June 12, 2013 . . . . At that time, the claimant reported increased panic attacks due to having to live with her parents because she was not able to afford a place of her own because she was turned down for SSI.  She denied depression and reported no sleep or appetite disturbance. The evaluation stated that she was "4 months sober" and attending nightly AA meetings.  She was compliant with medications including Xanax, Lexapro, Remeron, and Wellbutrin.  The psychiatrist concluded that the claimant's depressive symptoms were greatly improved with medication, but her anxiety symptoms continued with panic attacks despite medication and that her symptoms were exacerbated by her living situation and lack of income.  Of note, her future plans and goals list a single goal to "obtain her own place (Social Security)" . . . .  The mental status examination indicated that the claimant was neat and well groomed; her behavior was calm and cooperative; she made good eye contact; her affect was anxious; her thought process was goal directed; her perception was normal; her memory was adequate; her judgment was intact; and her insight was fair.  ***Despite an essentially normal mental status examination, her GAF was assessed at 45, which indicated serious symptoms.***  Her medications were unchanged and she was recommended for continued psychotherapy.  The psychiatrist commented that the claimant had a history of alcohol and opiate dependence and that she currently struggled with immense anxiety and panic disorder.  She also noted that the claimant had a history of depression that was "in remission" over the past few years.  She noted that the claimant's current stressors were related to "lack of income and employment" and that she had been "denied for SSI 4 times and was currently appealing her case."

(R. 24 (emphasis added).)  The ALJ then commented that, "[w]hile the undersigned has considered the GAF scores noted in the record, the DSM-V published by the American Psychiatric Association in 2013, has eliminated the use of the Global Assessment of Functioning

19

(GAF) scale, noting its 'conceptual lack of clarity' and 'questionable psychometrics in routine practice.'  Consequently, the GAF scores noted in this record are not dispositive of impairment severity or the ability to meet the mental demands of work; rather, they represent medial opinions that require supporting evidence to be accorded significant weight."  (R. 27.)

The Court finds this decision to be well supported by substantial evidence.  The record contains a single GAF score of forty-five, which is unsupported by either the accompanying mental status examination or other evidence of record.  The ALJ expressly considered the GAF score and set forth a rational basis for her refusal to accord it any significant weight.  The Court discerns no error in this discussion.

**D.** **Whether the Magistrate Judge Properly Declined to Entertain a Remand for Consideration of New Evidence**

Plaintiff's final objection concerns her request to the Appeals Council to remand the case for consideration of new evidence.  Following the ALJ's decision, Plaintiff submitted to the Appeals Council a letter dated February 12, 2014 from Plaintiff's therapist Ms. Morris, in which Ms. Morris opined, in part, that Plaintiff was unable to obtain employment as a result of her mental health challenges.  The Appeals Council stated, "[i]n looking at our case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 1–2.)  On review, the Magistrate Judge determined that, under Mathews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001), (1) the federal court did not have jurisdiction to entertain Plaintiff's challenge

to the Appeals Council's refusal to consider the additional medical evidence, and (2) the

February 12, 2014 letter did not meet the new evidence standard for remand pursuant to the sixth

sentence of 42 U.S.C. § 405(g).

Plaintiff now argues that this Court may review whether the Appeals Council rejected

supplemental evidence without setting forth reasons for doing so.  She goes on to argue that the

February 12, 2014 letter meets the new evidence standard for remand as it is neither cumulative

nor material.  This Court disagrees.

Sentence six of 42 U.S.C. § 405(g) states as follows:

> The court may, on motion of the Commissioner of Social Security made for good
> cause shown before the Commissioner files the Commissioner's answer, remand the
> case to the Commissioner of Social Security for further action by the Commissioner
> of Social Security, and it may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a showing that there is
> new evidence which is material and that there is good cause for the failure to
> incorporate such evidence into the record in a prior proceeding; and the
> Commissioner of Social Security shall, after the case is remanded, and after hearing
> such additional evidence if so ordered, modify or affirm the Commissioner's findings
> of fact or the Commissioner's decision, or both, and shall file with the court any such
> additional and modified findings of fact and decision, and, in any case in which the
> Commissioner has not made a decision fully favorable to the individual, a transcript
> of the additional record and testimony upon which the Commissioner's action in
> modifying or affirming was based.

42 U.S.C. § 405(g).  In order for the ALJ to consider any evidence which a claimant did not offer

at the initial proceeding, the claimant must show that (1) the evidence being proffered is new, (2)

the evidence is material, and (3) there is good cause for failing to incorporate the evidence into

the administrative record.  Szubak v. Sec'y of HHS, 745 F.2d 831, 833 (3d Cir. 1984).  All three

prongs must be satisfied for the additional evidence to be admitted.  Id.  The Third Circuit has

held that in order to be new, evidence must not be merely cumulative of what is already in the

record. Id. Evidence is material if it is "relevant and probative" and there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Id. Crucially, the evidence must relate to the time period for which benefits were denied and must "not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id. Moreover, the reasonable possibility standard, "while requiring more than a minimal showing, need not meet a preponderance test." Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985). Finally, good cause must also be shown for failing to submit additional evidence during the administrative proceeding. Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001). The underlying purpose of the good cause requirement is to prevent an "end-run method of appealing an adverse ruling from the Secretary." Szubak, 745 F.2d at 834 (holding that the requirement prevents claimants from having more than one bite at the apple). The good cause element requires a claimant to show "some justification" for failing to submit the evidence, id., or to have "good reason" for failing to submit the evidence to the ALJ in the first place. Matthews, 239 F.3d at 595. The burden of demonstrating good cause rests with the plaintiff. Id.; Shuter v. Astrue, 537 F. Supp. 2d 752, 758 (E.D. Pa. 2008).

Guided by this standard, the Magistrate Judge first found that Ms. Morris's February 12, 2014 letter—which summarized Ms. Morris's treatment notes and restated information from a November 27, 2013 letter that was considered by the ALJ—was merely cumulative of pre-existing evidence in the record. Second, the Magistrate Judge determined that, notwithstanding Plaintiff's assertions that the letter included specific limitations impacting Plaintiff's performance in a work environment which were not in her previous letter, the letter would not

have made a difference in the ALJ's evaluation of the evidence.  Rather, because the letter was cumulative of pre-existing evidence in the record which the ALJ already reviewed and considered, the letter did not meet the materiality requirement.  Finally, the Magistrate Judge noted that Plaintiff failed to meet the good cause standard as she offered no reason as to why the letter was not obtained sooner.

The Court finds no error in this analysis.  Primarily, the Court notes that, even to date, Plaintiff offers no good cause for failing to obtain this letter earlier.  Indeed, the letter appears to be nothing more than Plaintiff's attempt to gain a second bite at the apple after receiving an unfavorable decision from the ALJ.  The Court also agrees that the letter is not new, as it is based on the same set of treatment records underlying the prior letter.  Finally, as the ALJ previously rejected Ms. Morris's opinion on multiple grounds, Plaintiff fails to establish how this letter would have altered the outcome of the case.  Accordingly, the Court overrules this objection.

## III.    CONCLUSION

For all of the foregoing reasons, the Court will overrule Plaintiff's Objections and adopt the Report and Recommendation in its entirety.  An appropriate Order follows.